**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

FRANCES AMBROSELLI,

                                            Plaintiff,

          -vs-                                 **DECISION & ORDER**

C.S. BURRALL & SON, INC. and HAL BURRALL,      11-CV-6267-CJS-MWP

                                    Defendants.

_____

**APPEARANCES**

For Plaintiff:                           Ted E. Trief, Esq.
                                      Matthew J. Wojtkowiak, Esq.
                                      Trief & Olk
                                      150 East 58th Street 34th Floor
                                      New York, NY 10155
                                      212-486-6060

For Defendants:                     Stephen C. Cunningham, Esq.
                                      Keidel Weldon & Cunningham, LLP
                                      925 Westchester Avenue Suite 400
                                      White Plains, NY 10604
                                      914-948-7000

                                      Joseph W. Dunbar, Esq.
                                      Damon Morey LLP
                                      200 Delaware Avenue Suite 1200
                                      Buffalo, NY 14202
                                      716-858-3732

**INTRODUCTION**

    **Siragusa, J.** Plaintiff filed a diversity complaint in this Court on May 20, 2011, alleging breach of contract and negligence when her bed and breakfast ("B&B") burned down and the insurance was insufficient to cover replacement costs. This case is before the Court on Defendants' motion for summary judgment. For the reasons stated below, Defendants' application is granted in part, and denied in part.

**FACTUAL BACKGROUND**

This lawsuit originally included Vermont Mutual Insurance Company as a defendant. However, the parties signed a stipulation of dismissal which was docketed on November 29, 2011, ECF No. 24, removing Vermont from the lawsuit. Further, in her memorandum of law in opposition to this pending summary judgment motion, Plaintiff has conceded to dismissal of her claims against Hal Burrall and her claims for attorney's fees. Pl.'s Mem. of Law at 2. The Court will, therefore, dismiss Hal Burrall as a party, and not consider the attorney fees claim. Thus, the remaining defendant is C.S. Burrall & Son, Inc. ("C.S. Burrall").

The facts are taken from the parties' Rule 56 statements and are in agreement, except as indicated, below. C.S. Burrall is an insurance company in Geneva, New York. Hal Burrall ("Burrall") was an insurance salesman for the company. Plaintiff Frances Ambroselli is now a resident of Georgia, but previously owned a Victorian era house in Cohocton, New York, which she operated as the Villa Serendipity Bed and Breakfast from 1999 until it burned down on October 11, 2010.

In July 2008, Burrall met with Plaintiff at her home and proposed an insurance contract. Burrall used a cost estimator program and measured the property to assist him in calculating the coverage for the property. The cost estimate was $433,991, which Burrall rounded up to $435,000. Burrall reviewed Plaintiff's old policy, which was with Finger Lakes Fire & Casualty Company and had a $250,000 actual cash value, due to increase to $260,000 for the period from August 31, 2008, to August 31, 2009.[1] On

---

[1] Plaintiff disputes that the coverage limits were those stated amounts, since the old policy refers to a replacement value endorsement policy adjustment with a separate premium. Pl.'s Statement of Facts ¶ 7.

August 22, 2008, Plaintiff agreed to purchase insurance from Burrall with a coverage limit of $435,000 for the dwelling, and a personal liability coverage limit of one million dollars. The policy was through the Vermont Mutual Insurance Company. In connection with the purchase, Plaintiff signed a "Policy Limits Acceptance" form which stated in pertinent part that, "I accept the policy limits applied for in my application and I understand that higher limits are available for an additional premium. I decline higher policy limits." Def.s' Ex. G, Aug. 22, 2008, ECF No. 35-7. After Burrall procured the policy for Plaintiff, Vermont Mutual dispatched their own field inspector to review Plaintiff's property. Ambroselli Dep. 70:6-25, 71:1-10, Jan. 27, 2012, ECF No. 35-7 (attached as Ex. B to Def's Rule 56 Appendix).

On October 2, 2008, Shannon Burnett of Vermont Mutual sent a copy of the policy to Plaintiff with a cover letter suggesting that she read the policy in its entirety and contact Ms. Burnett if Plaintiff had any questions. Plaintiff renewed the Vermont Mutual policy twice, once in 2009 and once in 2010. Each year, the policy automatically increased coverage by six percent to guard against inflation, and by the 2010–2011 policy year, the coverage limit for the dwelling was $489,500.

The October 11, 2010 fire, referenced above, caused total loss to the dwelling, and Vermont Mutual paid $517,525 to Plaintiff under the policy. Plaintiff still owns the property in Cohocton on which the dwelling once stood. In her complaint, she alleges that Defendant was negligent in calculating the amount of insurance needed, since the policy issued was insufficient to cover her losses.

## STANDARD OF LAW

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In

determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## ANALYSIS

### *Burrall's Estimation of Coverage*

Defendant argues that it is entitled to summary judgment, since absent agreement, insurance brokers and agents are generally not responsible for amounts of coverage. Plaintiff counters that material issues of fact preclude summary judgment.

In support of her position, Plaintiff argues that "circumstances may arise in which insurance agents or their brokers, through their conduct or express or implied contract with customers and clients, may assume or acquire duties in addition to those fixed at common law." Pl.'s Mem. of Law at 4. Plaintiff cites to *Murphy v. Kuhn*, 90 N.Y.2d 266, 272 (1977), in which the New York Court of Appeals addressed a similar argument and concluded it was not necessary to decide the issue:

> Plaintiffs propose that insurance agents can assume or acquire legal duties not existing at common law by entering into a special relationship of trust and confidence with their customers. Specifically, plaintiffs contend that a special relationship developed from a long, continuing course of business between plaintiffs and defendant insurance agent, special reliance and an affirmative duty to advise with regard to appropriate or additional coverage.
>
> Generally, the law is reasonably settled on initial principles that insurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage. Notably, no New York court has applied plaintiffs' proffered "special relationship" analysis to add such continuing duties to the agent-insured relationship.

*Murphy*, 90 N.Y.2d at 272 (internal citations omitted). Plaintiff postulates that when Burrall calculated the coverage amount, he undertook a duty to estimate and recommend adequate coverage to Plaintiff. The case on which Plaintiff places greatest reliance is *Stevens v. Hickey-Finn & Co.*, 261 A.D.2d 300 (N.Y. App. Div. 1st Dep't 1999), which held in its entirety as follows:

> It is undisputed that when it came time for plaintiff to renew his home insurance policy in 1994 he contacted defendant brokerage agency and spoke to the agent through whom he had periodically purchased home insurance during most of the preceding decade. Plaintiff requested "proper and adequate" coverage for his home, which had recently been improved, and, in response, the agent, as she had in prior years, utilized a "Home Aestimator" computer program to check that the level of coverage

> to be afforded was indeed "proper and adequate". Thereafter, a home insurance policy containing a coverage cap of $176,000 was issued to plaintiff by third-party defendant Standard Fire Insurance Company. In the aftermath of a fire at the insured premises, plaintiff discovered that, in fact, he had been seriously underinsured; his damages allegedly exceeded his coverage by some $96,374. Even if plaintiff's request to the agent to obtain "proper and adequate" coverage for his recently improved home did not itself trigger a duty on the agent's part to assure that plaintiff's home was completely insured against property loss, once the agent, in response to plaintiff's request for "proper and adequate" coverage, undertook to estimate the replacement value of the property to be insured, she owed plaintiff a duty to perform that estimation with a reasonable degree of care and accuracy (*see, Gediman v Anheuser Busch*, 299 F2d 537, 546, citing *Glanzer v. Shepard*, 233 NY 236, 239). In view of the significant disparity between plaintiff's alleged loss and his coverage, a triable issue is raised as to whether the duty assumed in this case by plaintiff's broker was discharged by the agent's use of the above-mentioned "Home Aestimator" program.

*Stevens*, 261 A.D.2d at 300–01. Defendant argues that this case is distinguishable since, unlike the situation in *Stevens*, Plaintiff here did not have a long term relationship with Defendant[2] and they spoke only infrequently. Further, Plaintiff did not seek out and approach Defendant, "nor did she request full replacement value coverage." Def.s' Reply Mem. of Law at 5. Defendant contends that it was not the plaintiff's request in *Stevens* for full replacement value coverage that triggered the duty on the part of the insurance salesman, but, rather, the salesman's "undertaking the plaintiff's request that created the duty." *Id*. Additionally, Defendant argues that Burrall never advised Plaintiff that she was insured for full value. *Id.* at 6.

---

[2]Burrall notes in his depostion testimony only that he had been trying to meet with Plaintiff since 2003, and only succeeded in 2008. Burrall Dep. 30:14–18; Ambroselli Dep. 19:18–21.

Defendant maintains that the present case is more similar to *Chase's Cigar Store Inc. v. The Stam Agency, Inc.*, 281 A.D.2d 911 (N.Y. App. Div. 4th Dep't 2001). In that case, the appellate court started with the general principle that, "'[i]n New York, the duty owed by an insurance agent to an insurance customer is ordinarily defined by the nature of the request a customer makes to the agent'." *Chase's Cigar Store*, 281 A.D.2d at 912 (quoting *Wied v. New York Cent. Mut. Fire Ins. Co.*, 208 A.D.2d 1132, 1133 (N.Y. App. Div. 3rd Dep't 1994)). The specific insurance coverage at issue in *Chase's Cigar Store* was employee theft/dishonesty coverage. The Fourth Department rejected the plaintiff's argument that it had a special relationship with the insurance agency and, therefore, was entitled to rely on the agent's representation "that the policy was 'a better policy' than plaintiff's existing policy." *Id*. Further, the Fourth Department held that once the plaintiff "received the declarations pages and insurance policy, it had 'conclusive presumptive knowledge' of the terms and limits of the policy." *Id*. That policy "contained an exclusion for employee dishonesty.…" *Id*. at 913. The Court, though, is not persuaded by the holding in *Chase's Cigar Store*. There, a particular type of coverage was at issue, whereas here, the amount of coverage is the issue.

In this case, the Court finds that the evidentiary proof raises a material question of fact as to whether Burrall took on the obligation to estimate the value of the B&B so that it would be properly insured. In that regard, although Defendant makes much of the point that Plaintiff did not *ask* Burrall to estimate the value of her dwelling, he nonetheless voluntarily assumed that task, using a computer program and his visual inspection of the property to assist him, and Plaintiff relied on Burrall's estimate of coverage, which she contends woefully undervalued her property. Defendant's motion for summary judgment

on this ground is denied.

### *Duty to Read Defense*

Defendant argues that Plaintiff was chargeable with knowledge of the insurance policy, and therefore is presumed to have received the policy she desired and to have assented to its terms. Defendant argues that this is the case even if Plaintiff did not read the policy. Plaintiff counters that Defendant's position is without merit, since its own agent specifically recommended the amount of coverage contained in the policy and Plaintiff relied on the agent's recommendation. Consequently, Plaintiff points out that reading the policy would simply have confirmed that the it contained the coverage amount recommended by Burrall. The Court agrees with Plaintiff and is unpersuaded by Defendant's argument. In this regard, the New York Court of Appeals has not strictly followed the line of cases holding that "once an insured has received his or her policy, he or she is presumed to have read and understood it and cannot rely on the broker's word that the policy covers what is requested…." *American Bldg. Supply Corp. v. Petrocelli Group, Inc*. 19 N.Y. 3d 730, 736 (2012). As was the case in *American Bldg. Supply*, the Court believes that here "receipt and presumed reading of the policy does not bar an action for negligence against the broker…." *Id*.

### *C.S. Burrall & Son, Inc. as an Agent of Vermont Mutual Ins. Co.*

Defendant also argues that as an agent of a disclosed principal, C.S. Burrall & Son, Inc., it is not liable to Plaintiff. In support of this argument, Defendant cites several cases, including *Gibbs v. Home Ins. Co.*, 252 A.D. 805 (N.Y. App. Div. 3rd Dep't 1937), where the appellate court held:

> The action against Taylor Co., Inc., is not maintainable because it clearly appears from the complaint that that defendant was the authorized agent of a disclosed principal, the codefendant. Where an agent is duly constituted and names his principal and contracts in his name and does not exceed his authority the principal is responsible and not the agent.

*Id*. at 805. The three other cases cited repeat this principle. Def.'s Mem. of Law at 14. Plaintiff responds that the agency agreement with Vermont does not relieve C.S. Burrall from liability for the negligent acts of its agent, Burrall. In support of her position, Plaintiff also cites several cases, including *Bedessee Imports, Inc. v. Cook, Hall & Hyde, Inc.*, 45 A.D.3d 792 (N.Y. App. Div. 2d Dep't 2007), in which the plaintiff sued an agency, CHH, alleging that CHH failed to procure insurance requested by the plaintiff. CHH defended by arguing, *inter alia*, that it was an agent of two other disclosed insurances companies, and the appellate court held:

> "The fact that an agent acts for a disclosed principal does not relieve the agent of liability for its own negligent acts" (*American Ref-Fuel Co. of Hempstead v Resource Recycling*, 281 AD2d at 575…). The record contains evidence that CHH itself was negligent in failing to procure the coverage requested.

*Bedessee Imports, Inc.*, 45 A.D.3d at 794. In addition, Plaintiff argues that "C.S. Burrall fails to show how the acts of its employee [Burrall], particularly his acts in estimating the replacement cost coverage of the B&B, fall within the scope of the authority granted to C.S. Burrall by Vermont Mutual." Pl.s' Mem. of Law at 9. Finally, Plaintiff maintains that Defendant has presented no proof that the agency agreement between C.S. Burrall and Vermont Mutual was provided to Plaintiff such that she would have knowledge of its contents. Therefore, Plaintiff contends that, "When insureds do not have access to agency agreements between insurers and their agents, the insured is not placed on notice as to the provisions in such agreements, and is not bound by them." Pl.'s Mem. of

Law at 10. On this point, Plaintiff cites to *Downs v. Del Regno*, 37 A.D.2d 894, 895 (N.Y. App. Div. 3d Dep't 1971), where the appellate court held, "[w]hile private agreements between the agent and the insurance company are effective between themselves, we know of no authority which permits such agreement to overcome the apparent authority publicly accepted in the writing of insurance and not in contravention of the terms of a written agency agreement." *Id*. at 895; *see also Cohen v. Utica First Ins. Co.*, 436 F. Supp. 2d 517, 528 (E.D.N.Y. 2006) ("The insured did not have any access to the separate agreement between Wagner and Utica First on which defendant relies, and therefore the insured was not on notice as to the provisions in that agreement, and it is not binding on Mario's Painting.") (citing *Downs*).

In reply, Defendant repeats its argument, "Burrall was the authorized agent of Vermont Mutual and…may not be held liable for any acts done within the scope of its authority as an agent." Def.s' Reply Mem. of Law at 9. Their reply does not address the *Bedessee Imports, Inc.* case.

Based on the case law cited above, the Court concludes that a material issue of fact precludes summary judgment on this issue as well. If Burrall took on the duty to estimate the value of Plaintiff's property, was he acting within the scope of his agency with Vermont Mutual? If so, he may escape liability. If not, a jury may find him liable for negligently executing the duty.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, ECF No. 30, is granted in part. The claims asserted against Hal Burrall, an individual, are dismissed, as are Plaintiff's claim for an award of attorney's fees. In all other respects,

Defendant's application is denied. The Court will issue a separate pretrial order.

IT IS SO ORDERED.

Dated: February 5, 2013
       Rochester, New York

                        ENTER.    /s/ Charles J. Siragusa
                                       CHARLES J. SIRAGUSA
                                       United States District Judge